*Cates & Lindsey* for plaintiff.

LYLE
*vs*
LINDSEY, &c.

---

## Lyle *vs* Lindsey, &c.

ERROR TO THE MADISON CIRCUIT.

*Gaming.  Equity and equitable jurisdiction.*

JUDGE MARSHALL delivered the opinion of the Court.

CHANCERY.

Case 33.

Oct. 4.

The case stated.

THIS bill was filed by Lindsey, the security in a replevin bond, taken under a judgment in favor of Lyle against Elkin, to injoin the collection of the debt, on the ground that the note on which the judgment was founded was given for a gaming debt, unlawfully won from Elkin, "by Lyle, or by one Matthews, with his privity, knowledge and participation." Lyle in his answer denies that the consideration of the note was gaming, so far as he knows, or so far as he is concerned—does not know what may have passed between Elkin and Matthews—denies that Matthews, either with his privity, knowledge or participation, won said sum, or any other from Elkin, and proceeds to state that Matthews, being indebted to him, proposed that he should take Elkin, whose note he held— that he agreed to do so if Elkin would say all was right, and that upon Elkin's saying it was right, that he owed Matthews the amount, and would pay it for him to Lyle— he took the note of Elkin, payable to himself. He denies the charge that it was so taken as a shift to evade the law.

Two depositions only were taken, in one of which the witness swears positively that Lyle told him, that he knew before he took Elkin's note, that Elkin's indebted-

ness to Mathews was for money won; but that as Elkin said he would pay, he took his note. Matthews, who is the other witness, proves that Elkin's debt to him was for money won at gaming, and states circumstances conducing strongly to show that Lyle knew, or had reason to believe that such was the fact when he took Elkin's note. He also states, that his own debt to Lyle was for money won. Upon this state of the case, the Court perpetually enjoined the collection of the judgment. And Lyle prosecutes a writ of error for the reversal of the decree.

'A creditor of a winner receives a note given for a gaming consideration, with information that such was the consideration, is in no better condition to enforce payment than the winner.

We are satisfied that the evidence is sufficient to establish the fact, that Lyle knew when he took Elkin's note, that it was founded on a gaming debt to Mathews. And especially, as the answer obviously means to deny not that knowledge which may be derived from information, but only that which arises from personal observation of the fact. And we have no doubt that the former species of knowledge is sufficient to affect the conscience of the party in this as in other cases, and to place him in the same condition as if he had had personal knowledge of the fact. Laying out of view the fact that Lyle's own demand against Matthews was for a gaming debt, the question upon the other facts established by the evidence, is whether a note given by the loser, to the creditor of the winner, who knows the consideration to be a gaming debt, may be avoided on the ground of the illegali-

—And a surety on a replevy bond given to secure a debt due on gaming consideration, may be relieved in equity from the payment for that cause.

ty of the consideration. If this question be answered in the affirmative, the case of *Pope's adm'r.* vs *McKinney,* (*3 B. Monroe,* 93,) establishes the jurisdiction of the Court of Equity to relieve against the note, or a judgment thereon, and we should not doubt that the surety in a replevy bond taken in the course of enforcing such a judgment, may set up this equity. And besides, the principal in this case is insolvent or at least embarrassed, and being a party, acquiesces in the surety's appeal to the Chancellor.

In support of the decree, the complainant relies upon the first and fourth sections of the act of 1833, (*Statute Law,* 758–9.) The first section provides for the recovery by the loser, or after six months by any other, of any money, goods, lands or other thing, won at gaming, and

received by the winner or by another to his use; and is understood as authorising an action for the thing against the winner or any other who has it for his use. The fourth section enacts, that when the loser, in consideration of his having lost money or property, shall pay to the winner, or another to his use, *knowing of the unlawful gaming*, either money or property, the money or property as paid, shall be liable to the claim of the owner or another, in the same manner as money or property won and paid. Under this section the loser is authorised to claim the money or property paid, in consideration of his loss to a third person, for the use of the winner, and to recover it from such third person, provided he knew when he received it, that it was paid on a gaming consideration.

Looking to the scope and object of this act, as considered in the case of *Pope's adm'r.* vs *McKinney, supra,* we are of opinion that under the fourth section, money or property paid to the creditor of the winner, is paid to the use of the winner, which indeed is the obvious character of a payment by one, of the debt of another. If therefore, the creditor receiving such payment knew that it was in discharge of a gaming debt, the money or property so paid, may be recovered back from him. And it is sufficient, if he knew it by information to be relied on, or had reasonable ground to know or believe it. As Elkin, then, if he had paid the money to Lyle, instead of giving his note, could have recovered it back, on account of the illegal consideration as between him and Matthews, the Chancellor having jurisdiction, according to the case of *Pope's adm'r.* vs *McKinney,* to decree back the money, has of course, jurisdiction to prevent its coercion, and should do so.

It is contended, however, that without denying this operation of the statute, no relief should have been granted in this case, because the case as made out by the proof, is not the same as that stated in the bill. But waiving the consideration that the surety alledges his ignorance of the particulars of the transaction, and his dependance on the disclosures of the answer and the proof. We think the bill, in alledging that the money was won by Matthews from Elkin, with the knowledge &c. of Lyle,

*Money or property paid to the creditor of the winner at gaming is paid to the use of the winner, and may be recovered back if such creditor knew or had reasonable ground to believe that such money or property was paid in discharge of a gaming debt.*

at the time of the winning, does include the allegation, that Lyle at the time of taking the note, knew it was for money won of Elkin by Matthews. And as Lyle not only denies his knowledge, &c. at the time of the winning, but also in terms denies that he yet knows that the note was for money won, the question whether he knew it at the time of taking the note, though not made the very point of the issue by the pleadings, is certainly embraced in what is affirmed on the one side, and denied on the other; and there is no pretext for alledging surprise in the case. There is therefore, a sufficient correspondence between the allegations and the proof, to authorize a decree, based upon ths fact, that Lyle knew when he took Elkin's note, that it was given in consideration of a gaming debt to Matthews. The fact that it was given also to pay a gaming debt from Matthews to Elkin, certainly does not weaken the claim to relief. And it is not necessary to say, what should have been the effect of this fact, if Lyle had not known the other.

Upon these views of the case, the decree is affirmed.

*Caperton* for plaintiff: *Turner and Goodloe* for def'ts.